**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**84 LUMBER COMPANY, LP,**

      **Plaintiff,**

                                  **Civil Action 2:15-cv-1052**
    **v.**                             **Magistrate Judge Chelsey M. Vascura**

**THOMPSON THRIFT CONSTRUCTION,**
**INC.,**

      **Defendant.**

## <u>OPINION AND ORDER</u>

This case is before the court for consideration of Plaintiff's Motion for Partial Summary Judgment and Defendant's Motion for Summary Judgment. (ECF Nos. 63 & 64.) For the reasons that follow, Plaintiff's Motion (ECF No. 63) is **GRANTED IN PART AND DENIED IN PART**, and Defendant's Motion (ECF No. 64) is **DENIED**.

### I.      Factual and Procedural Background

Defendant/Counter-Plaintiff Thompson Thrift Construction ("TTC") was the general contractor for a large multi-family residential complex, the 801 Polaris Extended Stay Hotel (the "Project"), in Delaware, Ohio. TTC subcontracted many portions of the Project, including siding and trim work to be performed by Plaintiff/Counter-Defendant 84 Lumber Company ("84").

Before negotiating and agreeing upon a subcontract, 84 investigated the Project as it existed at the time. It expressed concerns about previous work on the Project, including the framing completed by another subcontractor that 84 would need to use for its exterior siding job.

1

84 also expressed concern about the short timetable for the Project. Even so, the parties reached an agreement and executed it on January 16 and 17, 2014.

That agreement included both a signed Subcontract and a signed Addendum. The signed Subcontract generally provided that 84 would timely complete the siding work, providing the workforce and working overtime if necessary, and that it would complete the siding work pursuant to the siding manufacturer's installation specifications and TTC's approval. 84 would also provide detailed payment applications to TTC by the fifth of each month. TTC would then submit the payment applications to the Project's owner, and, within 30 days of receiving the payment application or 10 days after receiving payment from the owner, TTC would pay 84 monies due. At paragraph 4, the Subcontract provided as follows:

> The Contract Documents consist of this Agreement including all exhibits (also referred to herein as the "Subcontract"), all drawings for the Project, the specifications for the Project, any addendums, the contract between the Owner and the Contractor (the "General Contract"), and all other documents identified in this Agreement and the General Contract.

At paragraph 22, the Subcontract provides as follows:

> Entire Agreement: This instrument and the items designated above as constituting a part of the Agreement and the Contract Documents constitute the entire agreement existing between the parties. There are no other agreements, verbal or written relating to the Project, between the parties. This Agreement supersedes any and all other agreements, contracts and understandings, both written and oral, between the parties.

At sub-paragraph 25(j), the Subcontract provides as follows:

> No amendment of this Agreement shall be effective unless the same is made in writing and signed by the parties hereto.

Exhibit A3 to the Subcontract is an addendums list and includes only the following language: "Not applicable at this time."

A document, entitled "Addendum," which was executed by both parties at approximately the same time as the Subcontract, provides the following:

> 1. **Purpose of Addendum:** This Addendum modifies the terms of the above-referenced Agreement ('Critical Requirements of the Subcontractor') between Contractor [TTC] and Subcontractor [84] for the provision of goods and/or services by Subcontractor . . . . This Addendum will supersede and control any conflicting terms or conditions of the Agreement.
>
> * * *
>
> 5. **Payments:** All invoices issued and payments made in connection with the Agreement shall be subject to the terms and conditions of the Contractor-Commercial Credit Agreement between Contractor and Subcontractor, which is incorporated herein by reference. If Contractor's Credit Agreement is 14 days past due or greater, 84 reserves the right to suspend this agreement and any current project(s) and will not be held liable for any damages for such suspension.
>
> 6. **Damages & Prime Agreement:** 84 will not be held liable for liquidated or consequential damages, except for actual physical damage. Contractor acknowledges that 84 is not bound to any terms and conditions in any agreement between Contractor and any other party.
>
> * * *
>
> 9. **Legal Fees:** In the event of a legal proceeding arising from this Agreement, each party is responsible for its own costs, expenses and attorneys' fees.

(ECF No. 1, Exhibit 2.)

Two Contractor-Commercial Credit Agreements were executed between 84 and TTC, one on March 27, 2013, and one on October 24, 2013. (ECF No. 63-1 at PAGEID ##749, 752.)

These identical Credit Agreements provide, in pertinent part, as follows:

> 1 * * * **THE CUT-OFF DATE FOR MONTHLY BILLING IS THE TWENTY-FIFTH (25TH). A BILL/STATEMENT OF THE TRANSACTION WILL BE SENT TO APPLICANT AND MUST BE**

**PAID IN FULL NO LATER THAN THE TENTH (10TH) OF THE MONTH NEXT FOLLOWING THE CUT-OFF DATE.**

The dispute underlying this action arises out of 84's alleged failure to conform to siding specifications and to timely complete siding work, TTC's withholding of payment to 84, and, ultimately, 84's suspending work on the Project, making it necessary for TTC to find a replacement subcontractor. 84 asserts claims against TTC for (1) breach of contract, (2) unjust enrichment, and (3) violations of Ohio's Prompt Payment Act. (*See* ECF No. 44.) 84 relies substantially upon the Addendum as the basis for its claims. 84's claim of breach rests on its allegations that TTC failed to timely pay 84 for much of the work that 84 completed and that, to the extent that 84 did not comply with the schedule to which the parties had agreed, TTC was responsible for the delays. 84 also alleges that TTC has improperly withheld a retainage to which 84 is entitled. 84 alleges that TTC owes it $213,678.88, plus interest, for materials and work on the Project. 84's claims of unjust enrichment and violation of Ohio's Prompt Payment Act rest on similar allegations. (*See* ECF No. 44).

TTC asserts a counterclaim against 84 for breach of contract and relies on the Subcontract. (*See* ECF No. 46.) TTC contends that the Addendum is not enforceable in light of paragraphs 4, 22, and 25(j) of the Subcontract. It further contends that 84 breached the Subcontract by, *inter alia*, failing to complete work on the Project in accordance with the design and schedule provisions. TTC asks for liquidated and cost-of-completion damages, as well as attorney's fees and costs.

84 now asks for summary judgment on a portion of its Prompt Payment Act claim and on TTC's breach-of-contract counterclaim. (*See* ECF No. 63.) TTC seeks summary judgment on all of 84's claims and its own counterclaim. (*See* ECF No. 64.) 84 has twice objected to

materials upon which TTC relies in support of its motion for summary judgment and in its opposition to 84's motion for partial summary judgment. (*See* ECF Nos. 78 and 83.) 84 has also filed a motion for leave to file a sur-reply to TTC's reply in support of TTC's motion for summary judgment and attached its sur-reply as an exhibit. (ECF No. 97.) TTC objected to 84's motion for leave to file a sur-reply and to 84's filing of its sur-reply as an exhibit. (ECF No. 100.) Finally, 84 asks this Court to hold oral argument on 84's motion for partial summary judgment (ECF No. 85) and to hold a scheduling conference after ruling on the motions for summary judgment. (ECF No. 104.)

## II. Legal Standards

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party has the initial burden of proving that no genuine issue of material fact exists, and the court must draw all reasonable inferences in the light most favorable to the nonmoving party." *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion").

The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255 (citation omitted). "The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, . . . there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to

create a genuine dispute." *Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) (internal quotation marks and citations omitted), *cert. denied*, 565 U.S. 1157 (2012); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record"). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stansberry*, 651 F.3d at 486 (citing *Celotex*, 477 U.S. at 322–23).

Additionally, when actions are brought pursuant to diversity jurisdiction, this Court generally applies the substantive law of the forum state. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, (1938). But, when interpreting contracts in a diversity action, the Court generally enforces the parties' contractual choice of governing law. *See, e.g., Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 596 (1991); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). In this case, the parties contracted to have Ohio law govern their contract.

When applying Ohio law, this Court must "follow the decisions of the state's highest court when that court has addressed the relevant issue." *Talley v. State Farm Fire & Cas. Co.*, 223 F.3d 323, 326 (6th Cir. 2000). If the state's highest court has not directly addressed the issue, the Court must "anticipate how the [] state's highest court would rule . . . ." *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005). State-court appellate decisions may be persuasive indicators of the likely ruling of the state's highest court. *Id.*

### III.    Analysis

84 bases its motion for summary judgment with respect to TTC's breach-of-contract claim on the Addendum, which expressly excludes cost-of-completion damages, liquidated damages, and attorney's fees and costs. TTC opposes that portion of 84's motion on the ground

that the Addendum is not part of the Subcontract.  Both parties seek summary judgment with

respect to 84's Prompt Payment Act claim.  TTC contends that 84 is not entitled to payment

because of disputes about its work under the Subcontract, while 84 argues that it is entitled to

payment for materials provided to the project and work completed for which TTC received

payment from the owner of the Project.  Either party's success on its motion for summary

judgment with respect to the Prompt Payment Act claim depends upon its ability to demonstrate

the absence of genuine issues of material fact related to TTC's right to withhold payment to 84

under the Prompt Payment Act.  TTC must similarly demonstrate the absence of genuine issues

of material fact in order to secure summary judgment with respect to 84's breach-of-contract

claim.  Finally, TTC contends that 84 is precluded, as a matter of law, from recovering under an

unjust enrichment theory because an express contract governed 84's work on the Project.

## A.  84's Motion for Summary Judgment with Respect to TTC's Breach-of-Contract Claim

84's Motion for Partial Summary Judgment requests, in part, that this Court conclude that

TTC cannot recover cost-of-completion damages, liquidated damages, or attorney's fees and

costs for 84's alleged breach because the Addendum precludes them.  (*See* ECF No. 63.)  Before

the Court can address that specific request, it must resolve the threshold issue of whether the

Addendum is part of the Subcontract.  For the reasons that follow, the Court concludes that it is.

### 1.  The Applicability of the Addendum

TTC contends that the Addendum is not part of the Subcontract for two reasons: 1) the

Subcontract was fully integrated and excluded the Addendum; and 2) even if the Addendum had

been part of the Subcontract, 84's actions waived the Addendum.  The Court is not persuaded by

either of TTC's arguments.

7

### a. The Subcontract as a Fully Integrated Contract

TTC maintains that the Addendum is not part of the Subcontract. (*See* ECF No. 74.) Specifically, TTC argues that the Subcontract contains an express integration clause that prohibits the consideration of parol evidence, including the Addendum. (*Id*.)

84 argues that the parol evidence rule is inapplicable for two reasons. First, the parol evidence rule does not cover contemporaneous written agreements. (*See* ECF No. 82). Second, Ohio's method of construing the intent of agreements, by considering all documents of the same transaction as part of a contract, warrants the conclusion that contemporaneous written agreement are not parol evidence. (*See id.*)

A contract that appears complete and unambiguous on its face is presumed to embody the final and complete expression of the parties' agreement. *Fontbank, Inc. v. CompuServe, Inc.*, 742 N.E.2d 674, 678 (Ohio Ct. App. 10th Dist.), *appeal not allowed*, 739 N.E.2d 817 (Ohio 2000). This presumption, commonly referred to as the contract integration rule, is at its strongest when the contract contains an integration clause that expressly indicates that the contract represents the parties' complete and final understanding of the subject. *Id.* at 678-79.

However, the presence of an integration clause in a written agreement causes it to be no more integrated than having the complete terms in writing. *Galmish v. Cicchini*, 734 N.E.2d 782, 790 (Ohio 2000). The contract integration rule is a corollary principal to the parol evidence rule. *Faivre v. DEX Corp. Northeast*, 913 N.E.2d 1029, 1035 (Ohio Ct. App. 10th Dist.) (citing *Galmish*, 734 N.E.2d at 789), *appeal not allowed*, 915 N.E.2d 1254 (Ohio 2009). As such, when the parol evidence rule is inapplicable, the contract integration rule is also inapplicable. *Id.* at 1035.

Ohio courts have explained the parol evidence rule through multiple, seemingly inconsistent, formulations. The Ohio Supreme Court has stated that "the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements." *Williams v. Spitzer Autoworld Canton, L.L.C.*, 913 N.E.2d 410, 416 (Ohio 2009) (citations omitted). The Ohio Supreme Court has also formulated the parol evidence rule as "a writing intended by the parties to be a final embodiment of their agreement cannot be modified by evidence of earlier or contemporaneous agreements that might add to, vary, or contradict the writing." *Bellman v. Am. Int'l Group*, 865 N.E.2d 853, 856-57 (Ohio 2007). Finally, the Tenth District Court of Appeals formulated the parol evidence rule as the prohibition of varying, contradicting, or adding terms to a written contract with evidence of a prior or contemporaneous oral or written contract. *Fontbank*, 742 N.E.2d at 678.

The Ohio Supreme Court's two formulations of the parol evidence rule are facially inconsistent. In *Williams*, the Court explicitly states that only prior written agreements are parol evidence. *Williams*, 913 N.E.2d at 416. Conversely, *Bellman* does not distinguish prior and contemporaneous written agreements. *Bellman*, 865 N.E.2d at 856-57. However, the application of both formulations has been identical. This Court has not found an occasion where the parol evidence rule as expressed in *Bellman* was held to apply to a contemporaneous written agreement.

Only the Tenth District has explicitly phrased the parol evidence rule as *including* contemporaneous written contracts. *Fontbank*, 742 N.E.2d at 678. However, the issue in *Fontbank* was whether a prior written contract could be used to construe a written contract that contained an integration clause. *Id.* at 683. The court held that the prior written contract was not

parol evidence because it was outside the scope of the integration clause. *Id.* The court did not have the occasion to consider whether a contemporaneous written agreement is parol evidence. Further, no Ohio court has cited *Fontbank*'s formulation of the parol evidence rule.

The principle that contemporaneous written agreements are not parol evidence is further supported by Ohio's method of determining the intent of agreements. Ohio courts read all documents executed as part of the same transaction as a whole to determine the intent of the parties. *Foster Wheeler Enviresponse v. Franklin Cty. Convention Facilities Auth.*, 678 N.E.2d 519, 526 (Ohio 1997) (citations omitted). When construing a contract, an Ohio court gives effect to every provision whenever possible. *Id.* (citations omitted).

The presence of an integration clause does not prevent documents of the same transaction from being considered together when the documents were executed without any meaningful lapse of time in between. *Seyfried v. O'Brien*, 81 N.E.3d 961, 968 (Ohio Ct. App. 8th Dist. 2017). In *Seyfried*, an arbitration agreement and a purchase contract containing an integration clause were executed moments apart. *Id.* The court held that the integration clause did not prevent the purchase contract and arbitration agreement from being considered together. *Id.* Further, the court found the arbitration agreement to be controlling because to find otherwise would have rendered the arbitration agreement meaningless. *Id.*

Thus, Ohio's formulation of the parol evidence rule does not include contemporaneous written agreements. Although Ohio courts vary in how they phrase the parol evidence rule, in practice they apply it only to prior or contemporaneous oral contracts and prior written contracts. Further, to conclude that contemporaneous written contracts are parol evidence would contradict Ohio's method of interpreting agreements to consider together documents of the same transaction.

Here, contrary to TTC's argument, the contemporaneously executed Addendum is not parol evidence. As the Addendum is not parol evidence, the integration clause does not prevent the Addendum from being considered as part of the Subcontract.

### b. Waiver of the Addendum

TTC argues that even if the Addendum is part of the Subcontract, the terms of the Addendum are unenforceable because the course of conduct on the project was consistent with the Subcontract instead of the Addendum. Specifically, TTC alleges that 84 conceded that the Subcontract governed the pay application form and process and that TTC held a 10% retainage on labor and materials as demanded by the Subcontract rather than a 10% retainage on labor only as called for by the Addendum. Accordingly, TTC argues that the Addendum was waived.

84 responds that its conduct did not constitute a waiver of the Addendum. 84 agrees that it was required to use TTC's payment application form under the Subcontract but only because the Addendum contained no superseding provision. Further, 84 argues that it held the 10% retainage on labor and materials rather than the 10% retainage on labor only because TTC's payment application form, which 84 was required to use, automatically populated the retainage amount. (*Id.*)

A contract can be waived by express words or implied conduct, but the waiver must be intentional. *Quest Workforce Sol., LLC v. Job1USA, Inc.*, 7 N.E.3d 1020, 1031 (Ohio Ct. App. 6th Dist. 2016) (citing *List & Son Co. v. Chase*, 88 N.E. 120, 122-23 (Ohio 1909)); *Catz Enters. v. Valdes*, Nos. 07 MA 201, 07 MA 202, 08 MA 68, 2009 WL 3003925, at *8 (Ohio Ct. App. 7th Dist. Sept. 17, 2009) (citing *White Co. v. Canton Transp. Co.*, 2 N.E.2d 501 (Ohio 1936)). A waiver assumes that the party had an opportunity to choose between either relinquishing or enforcing the right. The moving party has the burden to prove the waiver by clear and

unequivocal acts by the alleged waiving party. *Catz Enters.*, 2009 WL 3003925, at *8. Whether a party has agreed to waive parts of a contract is typically a question of fact. *Id.* (citations omitted).

TTC has failed to meet its burden in opposing 84's Motion for Summary Judgment. The Addendum provides that payments are subject to the terms and conditions of the Contractor-Commercial Credit Agreement. Neither of the identical Credit Agreements executed between TTC and 84 specifies the use of any particular payment application form. Accordingly, the Addendum does not contain a provision that supersedes the Subcontract's payment form provision. In regards to the payment dates, TTC has failed to identify any evidence that 84 agreed to follow the payment timeframes as laid out in the Subcontract rather than the Addendum. Thus, TTC's use of the payment form demanded by the Subcontract does not prove an express or implied waiver of the Addendum.

Further, 84 asserts that its compliance with the 10% retainage for labor and materials was out of necessity rather than an implied waiver of contract. This Court need not resolve this issue. Even if 84 had waived the 10% retainage provision of the Addendum, it does not follow that the full Addendum was waived. The retainage provision of the Addendum is not at issue in either motion for summary judgment. The Court concludes that the parties did not waive any of the portions of the Addendum that are relevant to the cross-motions for summary judgment.

Accordingly, all relevant portions of the Addendum are part of the subcontract.

### 2. Availability of Damages under the Subcontract

84 argues that the Addendum prevents TTC from recovering cost-of-completion damages, liquidated damages, or attorney's fees and costs. Paragraph 6 of the Addendum expressly precludes recovery of liquidated damages, and Paragraph 9 precludes recovery of

attorney's fees and costs in a legal proceeding arising from the Subcontract. TTC therefore cannot recover liquidated damages or attorney's fees and costs associated with the breach-of-contract claims. Regarding cost-of-completion damages, 84 argues that TTC cannot recover because 84 suspended work in accordance with Paragraph Five of the Addendum, which precludes damages for suspension of work. Specifically, 84 states that Pay App. 2 was submitted on June 6, 2014; payment became past due on July 10, 2014; and work was suspended on August 6, 2014.

TTC agrees that 84 submitted Pay App. 2 on June 6, 2014, but submits that the Subcontract controls the timeframe for payment. The Subcontract provides that a payment application submitted after the fifth day of the month is to be considered the following month. (*See* ECF 74.) The Subcontract further provides that payment is not due until 30 days after a properly submitted application for payment and that TTC was not obligated to pay for defective work until the defects were remedied. Accordingly, TTC contends, as Pay App. 2 was submitted on June 6, 2014, it was to be processed on July 5, 2014, and payment would first have been due on August 4, 2014. (*Id.*) Applying 84's theory that it had the right to suspend work on the Project fourteen days after nonpayment, August 18, 2014, would have been the first date on which 84 could have suspended work. The Court has concluded, however, that the Addendum is part of the Subcontract.

The Subcontract could also control the timeframe for payments, however, if a Credit Agreement was not properly incorporated by reference into the Addendum. TTC argues that no credit agreement was incorporated by reference because the Addendum fails to specify which of two Credit Agreements was to be incorporated. (*See* ECF No. 74.) If no Credit Agreement was incorporated, Paragraph 5 of the Addendum is meaningless and the Subcontract controls the

timing of payments and 84's right to suspend work for nonpayment. The Court concludes, however, that the Credit Agreement was properly incorporated.

For a contract to incorporate a document by reference, the contract must make clear reference to the document and describe it in such terms that its identity may be ascertained beyond doubt. *Volovetz v. Tremco Barrier Sols., Inc.*, 74 N.E.3d 743, 751 (Ohio Ct. App. 10th Dist. 2016) (citations omitted). Mere reference to a document is insufficient to incorporate it. *Id.* Rather, the contract language must also clearly demonstrate that the parties intended to incorporate all or part of the referenced document. *Id.* (citations omitted).

In *Volovetz*, the defendant sent plaintiff multiple emails containing two documents: the contract and a separate limited warranty contract. *Id.* at 746-47. The plaintiff did not understand the terms of the documents and requested to meet in person to execute the contracts. *Id.* at 747. At the meeting, the defendant forgot to have the plaintiff execute the limited warranty contract. *Id.* The defendant claimed that the signed contract's reference to a 30-year warranty incorporated by reference the unsigned limited warranty contract. *Id.* at 752. The *Volovetz* court rejected the defendant's argument, holding that the contractual language was not sufficiently clear or specific to incorporate the limited warranty contract. *Id.* The court did not question whether the defendant had attempted to incorporate by reference the limited warranty contract. Instead, the court concluded, the flaw was that the 30-year warranty language did not necessarily indicate that an external document was incorporated.

The crux of the dispute in this case is what is meant by "document." TTC takes the narrow view that "document" means only a particular sheet of paper. TTC argues that, as the Addendum does not specify whether the March or the October Credit Agreement was to be incorporated, the incorporation was insufficiently specific. The Court disagrees.

The court in *Volovetz* was not troubled by the existence of more than one copy of the limited warranty agreement. Rather, it held that the contract failed to specify that *any* external document existed.

Here, the Addendum explicitly incorporates by reference "the Contractor-Commercial Credit Agreement between Contractor and Subcontractor." A particular Contractor-Commercial Credit Agreement need not be specified for the incorporation to be effective so long as both parties knew beyond doubt the terms of the document incorporated. Here, TTC clearly knew the terms of the Credit Agreement as it provided two copies of the Credit Agreement, one signed in March and one signed in October, to 84. Those two copies contain identical terms. Therefore, the Addendum's failure to specify which Credit Agreement was incorporated does not prevent the Contractor-Commercial Credit Agreement Terms and Conditions document, as a form document, from being incorporated by reference. The specificity that was lacking in *Volovetz* is present in this instance. The Court concludes, therefore, that the Addendum is part of the Subcontract and that the Credit Agreement was incorporated by reference. Accordingly, Paragraph 5 of the Addendum governs the timing of payments and 84's right to suspend without being held liable for damages arising from its suspension.

Paragraph 5 provides, without qualification, that 84 could suspend work, without being liable for damages arising from the suspension, as of July 24, 2014, fourteen days after July 10, when TTC was obligated by the Credit Agreement to make payment on 84's Pay App. 2. TTC does not contend that it made payment on Pay App. 2 on or before July 24, 2014. 84 did not suspend work until several days later. Because the Credit Agreement's payment terms governed and Paragraph 5 permitted 84 to suspend work, TTC cannot recover cost-of-completion damages.

As the Court has noted, 84 correctly argues that Paragraph 9 of the Addendum prohibits the award of attorney's fees to TTC *for breach of contract*. However, as TTC argues, 84 brought a claim under Ohio's Prompt Payment Act. Under the Prompt Payment Act, the court awards reasonable attorney's fees and court costs to the prevailing party. Ohio Rev. Code Ann. § 4113.61(B)(1). The right to attorney's fees under the Prompt Payment Act cannot be waived. § 4113.61(D)(1). Accordingly, if TTC prevails in its defense of 84's Prompt Payment Act claim, TTC can recover attorney's fees and court costs incurred *in its defense of that claim*. However, TTC may not recover any attorney's fees TTC accrues in defense or prosecution of claims arising under the Subcontract.

### 3. Conclusion

The Court concludes that 84 is entitled to summary judgment with respect to TTC's claim for cost-of-completion damages, liquidated damages, and attorney's fees and costs for 84's alleged breach of contract. TTC may proceed on its breach-of-contract counterclaim, but is limited to the negligence damages permitted by the Addendum.

## B. The Parties' Cross-Motions for Summary Judgment with Respect to 84's Prompt Payment Act Claim

84 requests summary judgment with respect to a portion of its Prompt Payment Act claim, arguing that the evidence unequivocally establishes that on at least one occasion TTC relied on materials and labor supplied by 84 to obtain payment from the Project's owner while withholding payment from 84. TTC seeks summary judgment with respect to 84's entire Prompt Payment Act claim on the ground that the Prompt Payment Act permitted it to withhold payment from 84 in an amount that may be necessary to resolve claims related to materials and work. For

the reasons that follow, the Court concludes that neither party is entitled to summary judgment with respect to 84's Prompt Payment Act claim.

### 1. Prompt Payment Act

Ohio's Prompt Payment Act, at Ohio Revised Code § 4113.61(A)(1), allows a subcontractor to collect payment for work that it has completed and invoiced to the contractor "in sufficient time to allow the contractor to include the application, request, or invoice in the contractor's own pay request submitted to an owner." The payment from the contractor must be made within ten days of its receipt of payment from the owner. *Id.* "A contractor, however, is permitted to withhold 'amounts that may be necessary to resolve disputed liens or claims involving the work or labor performed or material furnished by the subcontractor.'" *Masiongale Elec.-Mech., Inc. v. Constr. One, Inc.*, 806 N.E.2d 148, 151 (Ohio 2004) (quoting § 4113.61(A)(1)).

### 2. 84's Motion for Summary Judgment with Respect to Its Pay App. 2

84 bases its Prompt Payment Act claim on three of its pay applications to TTC. It seeks summary judgment only with respect to its Pay App. 2, pursuant to which it sought $39,610.08 in payment from TTC. Evidence submitted by 84 establishes that TTC included $20,485 of that amount in its Pay App. 13R to the owner of the Project. (*See* ECF No. 63-9.) 84 argues that TTC's Pay App. 13R is evidence that TTC did not dispute that 84 was entitled to $20,485 for work performed during the period covered by its Pay App. 2 and TTC's Pay App. 13R as of July 10, 2014, when TTC submitted Pay App. 13R to the owner. Other evidence indicates that TTC received payment on Pay App. 13R in three separate installments on July 24, August 27, and September 25, 2014. (*See* ECF No. 63-11.) TTC did not, apparently, pay 84 any of the proceeds from Pay App. 13R.

TTC disputes the quality and timing of work performed by 84 and contends that it was excused from paying 84 any of the proceeds of TTC's Pay App. 13R because of those disputes. TTC cites evidence of defects discovered in mid-August 2014, after 84 had suspended work on the Project. (*See* ECF Nos. 66-16, 66-17). Under § 4113.61(A)(1), TTC was required to pay 84 within ten days of July 24, 2014, if any of the July 24 payment to TTC included the $20,485 attributed to 84's work. That ten-day period expired on August 3, 2014, and the evidence identified by TTC in opposition to 84's motion for summary judgment does not conclusively prove that TTC then had a basis for withholding the $20,485 from 84. Because the parties have not identified evidence that permits the Court to determine whether any of the July 24 payment was for 84's work, however, the Court cannot determine whether 84 has proved its claim under the Prompt Payment Act as to its Pay App. 2. The evidence identified by TTC establishes that it may have had a basis for withholding payment to 84 under § 4113.61(A)(1) by mid-August 2014. Accordingly, if TTC did not receive payment for 84's work in TTC's Pay App. 13R until August 27 or September 25, 2014, 84 cannot establish, as a matter of law, that TTC violated the Prompt Payment Act by withholding that payment. 84 is not, therefore, entitled to summary judgment with respect to the portion of its Prompt Payment Act claim based on its Pay App. 2.

### 3. TTC's Motion for Summary Judgment with Respect to 84's Prompt Payment Act Claim in Its Entirety

TTC ostensibly moves for summary judgment with respect to 84's Prompt Payment Act claim, which is based on 84's Pay Apps. 3 and 4, as well as 2, in its entirety. For the same reasons that the Court cannot determine, on the basis of the evidence that the parties have identified, whether 84 is entitled to judgment with respect to the portion of its Prompt Payment Act claim that is based on its Pay App. 2, the Court cannot grant summary judgment to TTC with

18

respect to that portion of 84's claim. The evidence identified by the parties simply does not permit the Court to determine, as a matter of law, when TTC received payment from the owner of the Project for the portion of its Pay App. 13R that was attributable to work and materials supplied by 84. Furthermore, the Court notes that TTC makes no specific arguments about 84's Pay Apps. 3 and 4 in support of its motion for summary judgment. It argues only that the Prompt Payment Act does not afford relief to 84 under the circumstances because TTC had a legitimate reason to withhold payment under § 4113.61(A)(1). TTC may be correct in that assertion, but it has not attempted to connect, through evidence, specific amounts withheld to specific work by 84 during the time periods covered by Pay Apps. 3 and 4. The Court further notes that neither party has identified Pay Apps. 3 and 4 themselves in a memorandum in support of or in opposition to a motion for summary judgment, and the Court has not independently found them among the attachments. The Court could not, therefore, determine whether TTC included amounts invoiced by 84 in those Pay Apps. in any of TTC's pay applications to the owner of the Project. Simply put, the Court cannot determine as a matter of law on the basis of the evidence identified by the parties that TTC did not violate the Prompt Payment Act in any respect as regards 84's Pay Apps. 3 and 4.

### 4. Conclusion

For those reasons, the parties' cross-motions for summary judgment with respect to 84's Prompt Payment Act claim are **DENIED**. The Court reminds the parties that, notwithstanding the Court's analysis in part A.2. of this Opinion and Order, TTC may recover attorney's fees and costs associated with the defense of 84's Prompt Payment Act claim if it succeeds in its opposition to that claim.

**C. TTC's Motion for Summary with Respect to the Breach-of-Contract Claims of Both Parties**

TTC moves for summary judgment on both its own and 84's breach-of-contract claims. For the following reasons, TTC's motion is **DENIED**.

### 1. Breach of Contract

To establish a breach-of-contract claim under Ohio law, a claimant must establish (1) the existence of a contract; (2) performance by the claimant; (3) breach by the defendant; and (4) damage or loss to the claimant. *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008) (citing *Jarupan v. Hanna*, 878 N.E.2d 66, 73 (Ohio Ct. App. 10th Dist. 2007)). "A party breaches a contract if [it] fails to perform according to the terms of the contract or acts in a manner that is contrary to its provisions." *Id.*

"The determination of whether a party's breach of a contract was a 'material breach' is generally a question of fact." *Whitt Sturtevant, LLP v. NC Plaza LLC*, 43 N.E.3d 19, 30 (Ohio Ct. App. 10th Dist. 2015) (citations omitted); *see also Klaus v. Hilb, Rogal & Hamilton Co. of Ohio*, 437 F. Supp. 2d 706, 731 (S.D. Ohio 2006) (summary judgment denied because jury must decide whether breach of thirty-day notice provision in contract was material). But "when the facts presented in the case are undisputed, whether they constitute performance or a breach of the contract, is question of law for the court." *Leisure Sys. v. Roundup LLC*, No. 1:11-cv-384, 2012 WL 5378302, at *8 (S.D. Ohio Oct. 31, 2012) (quoting *Stonehenge Land Co. v. Beazer Homes Inv., L.L.C.,* 893 N.E.2d 855, 863 (Ohio Ct. App. 10th Dist. 2008) (quoting *Luntz v. Stern*, 20 N.E.2d 241, 247 (Ohio 1939))). "The long and uniformly settled rule as to contracts requires only substantial performance in order to recover upon such contract[; m]erely nominal, trifling, or technical departures are not sufficient to breach the contract." *Ohio Farmers' Ins. Co. v.*

*Cochran*, 135 N.E. 537, ¶ 2 of the syllabus, (Ohio 1922); *see also Stonehenge Land Co.*, 893

N.E.2d at 863 (same).  The application of the substantial performance doctrine only applies

"where the party has made an honest of good faith effort to perform the terms of the contract"

and "the part unperformed must not destroy the value or purpose of the contract."  *Stonehenge*

*Land Co.*, 893 N.E.2d at 863 (citations omitted).  Generally, "[w]hether  a party has substantially

performed under the contract is a question of fact."  *Scolieri v. Danko Fine Landscaping*, No. 04

MA 59, 2005 WL 1324758, at *3 (Ohio Ct. App. 7th Dist. May 31, 2005) (citations omitted); *see*

*also Marinich v. Bush*, Nos. CA99-01-011, CA99-01-018, 1999 WL 1270991, at *3-4 (Ohio Ct.

App. 12th Dist. Dec. 30, 1999) (same).  When, however, the facts are undisputed, "whether they

constitute a performance or a breach of a written contract, is a question of law for the court."

*Luntz*, 20 N.E.2d 241 at ¶ 5 of the syllabus.

Here, it is undisputed that 84 performed work for TTC under the Subcontract.  84 also

acknowledges, however, that not all of its work was performed in precise conformity with the

Subcontract.  TTC contends that it performed its obligations under the Subcontract, that 84 did

not install the siding according to manufacturer specifications as required by the Subcontract,

that 84 did not meet the Subcontract's production requirements, and that TTC incurred damages

as a result of 84's breach.  TTC contends that those failures on 84's part establish 84's breach.

84 contends, on the other hand, that TTC cannot avoid paying 84 on the basis of obstacles

that TTC itself erected.  *See Craft Gen. Contractors, Inc. v. City of Urbana*, No. 81AP-346, 1982

WL 3960, at *8 (Ohio Ct. App. 10th Dist. Feb. 2, 1982).  84 disputes that TTC performed its

obligations and contends that TTC failed to manage the project, provide updated and accurate

schedules, assure that predecessor work was properly performed, provide siding punch lights,

and meet its payment obligations to 84.  Further, 84 disputes that its failure to meet the

Subcontract's production requirement was a breach because TTC failed to assure that predecessor work was properly completed, making the production requirement impossible to meet. 84 also contends that it substantially performed and is entitled to payment. As evidence, 84 relies, *inter alia*, upon the affidavit of its employee John Rister. (*See* ECF No. 77-3). Mr. Rister documents, in substantial detail, 84's efforts to conform to the Subcontract and the obstacles to its performance that were beyond its control.

The Court agrees that 84 has identified genuine issues of material fact that preclude judgment in TTC's favor on 84's breach-of-contract claim. If 84 is able to convince a finder of fact that it substantially performed, it may successfully defend against TTC's breach-of-contract claim while proving its own, in whole or in part. The substantial performance question is appropriately put to a finder of fact in this case because the evidence is not one-sided. For those reasons, TTC's motion for summary judgment with respect to 84's breach-of-contract claim, as well as its own, is **DENIED**.

## D. TTC's Motion for Summary Judgment with Respect to 84's Unjust Enrichment Claim

TTC also moves for summary judgment with respect to 84's unjust enrichment claim. Because genuine issues of material fact surround the parties' breach-of-contract claims, the Court cannot resolve this issue in the context of a motion for summary judgment.

Under Ohio law, a successful claim of unjust enrichment requires the plaintiff to establish that "(1) a benefit has been conferred by a plaintiff upon a defendant; (2) the defendant had knowledge of the benefit; and (3) the defendant retained the benefit under circumstances where it would be unjust to do so without payment." *Desai v. Franklin*, 895 N.E.2d 875, 882 (Ohio Ct. App. 9th Dist. 2008) (citation omitted). "Unjust enrichment occurs when a person 'has and

retains money or benefits which in justice and equity belong to another.'" *Id.* (quoting *Hummel v. Hummel*, 14 N.E.2d 923, 927 (Ohio 1938)).

But, a plaintiff cannot recover on a theory of unjust enrichment when an express contract governs the parties' relationship:

> It is clearly the law in Ohio that an equitable action in quasi-contract for unjust enrichment will not lie when the subject matter of that claim is covered by an express contract or a contract implied in fact. The mere fact that issues exist as to the creation of the contract or the construction of its does not alter this rule.

*Ebenisterie Beaubois Ltee v. Marous Bros. Constr., Inc.*, No. 02 CV 985, 2002 WL 32818011, at *6 (N.D. Ohio Oct. 17, 2002) (quoting *Ryan v. Rival Manu. Co.*, No. C-810032, 1981 WL 10160 at *1 (Ohio Ct. App. 1st Dist. Dec. 16, 1981)); *Aultman Hosp. Ass'n v. Cmty. Mut. Ins. Co.*, 544 N.E.2d 920, 824 (Ohio 1989) ("In the absence of fraud, illegality, or bad faith," a plaintiff may not recover in *quantum meruit* when a written agreement governs the parties' obligations. (citation omitted)).

84 asserts that a "construction exception" allows it to pursue an unjust enrichment claim if it has partially performed, despite the existence of the Subcontract. *See Ebenisterie Beaubois Ltee*, 2002 WL 32818001, at *8. Ohio courts have allowed plaintiffs to recover a reasonable value for labor and materials conferred by the partial performance of a contract even when that party has failed to perform in full conformity with the contract. *See, e.g., Murray v. Marbro Builders, Inc.*, 371 N.E.2d 218, 220-21 (Ohio Ct. App. 1st Dist. 1977). Unjust enrichment damages are decreased by damages caused to the other party by the failure to fully perform. *See id.* at 220 (citing *Kirkland v. Archbold*, 113 N.E.2d 496, 500 (Ohio Ct. App. 8th Dist. 1953)).

Here, 84 has adduced evidence that tends to show that it partially performed the Subcontract and conferred a benefit to TTC by its partial performance. (*See* ECF No. 77-3.)

23

TTC disputes this performance, arguing that if there was substantial performance, it did not confer a benefit because the quality of work was so poor it required TTC to hire another subcontractor. TTC does not attempt to demonstrate through evidence that none of 84's work conferred a benefit upon TTC, however. 84's claim that it may be entitled to damages under an equitable theory, even if it is not entitled to damages under the Subcontract, can only be determined after the dispute over contract claims is resolved. Therefore, TTC's motion for summary judgment with respect to the unjust enrichment claim is **DENIED**.

## IV. Disposition

Accordingly, Plaintiff 84 Lumber Company's Motion for Partial Summary Judgment (ECF No. 63) is **GRANTED IN PART AND DENIED IN PART**, and Defendant Thompson Thrift Construction's Motion for Summary Judgment (ECF No. 64) is **DENIED**. This action will proceed on 84's claims for breach of contract, unjust enrichment, and violation of Ohio's Prompt Payment Act and TTC's claim for breach of contract, except that TTC may not recover cost-of-completion or liquidated damages or attorney's fees and costs under the Subcontract.

84's Motion for Oral Argument (ECF No. 85) is **DENIED** as the parties' memoranda and the evidence submitted have permitted the Court to resolve the issues raised by the motions for summary judgment to the extent possible. 84's Motion for Leave to File a Sur-Reply (ECF No. 97) is **DENIED** in the sense that the Court has not considered the specific summary arguments that 84 made in the attached exhibit. For the same reason, TTC's objection to 84's motion for leave to file a sur-reply and to 84's filing of its sur-reply as an exhibit (ECF No. 100) is **MOOT**. 84's first and second Objections to Certain of TTC's Materials in Opposition to 84's Motion for Partial Summary Judgment (ECF No. 78 and ECF No. 83) are **OVERRULED** as moot because

the Court has not made reference to any of the evidence challenged by 84 in the context of this analysis.

TTC's Motion for Status Conference to Set Trial Date (ECF No. 104) is **GRANTED**. This matter is hereby scheduled for a telephonic conference on **WEDNESDAY, APRIL 11, 2018, at 2:30 p.m. EDT**. The parties are **DIRECTED** to call (614)719-3410 to initiate the conference.

**IT IS SO ORDERED**.


 /s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE