UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


**84 LUMBER COMPANY, LP,**

    **Plaintiff/Counterclaim Defendant,**

    v.

**THOMPSON THRIFT CONSTRUCTION, INC.,**

    **Defendant/Counterclaim Plaintiff.**

Civil Action 2:15-cv-1052
Magistrate Judge Chelsey M. Vascura

## OPINION AND ORDER

Plaintiff/Counterclaim Defendant, 84 Lumber Company ("84"), a subcontractor involved in the construction of a large multi-family residential complex in Delaware, Ohio (the "Project"), brings this action against Defendant/Counterclaim Plaintiff, Thompson Thrift Construction, Inc. ("TTC"), the general contractor for the Project, in connection with a dispute arising from the Project. 84 asserts state law claims for breach of contract, violations of Ohio's Prompt Payment Act, and unjust enrichment. (ECF No. 44.) TTC asserts a counterclaim for breach of contract. (ECF No. 46.) This Court has jurisdiction pursuant to 28 U.S.C. § 1332. On March 20, 2018, the Court granted in part and denied in part 84's Motion for Partial Summary Judgment. (ECF No. 105.) This matter is before the court for consideration of TTC's Motion to Reconsider portions of that opinion (ECF No. 106), 84's Opposition thereto (ECF No. 108), and TTC's Reply (ECF No. 109). For the reasons set forth herein, TTC's Motion is **GRANTED in part and DENIED in part**.

**I.**

The Court incorporates by reference the factual and procedural background set forth in its March 20, 2018 Opinion and Order granting in part and denying in part 84's Motion for Partial Summary Judgment (the "Opinion"). As such, the Court references only those facts that are pertinent to the issues before it for reconsideration.

TTC, the general contractor for a large multi-family residential complex in Delaware, Ohio (the "Project"), subcontracted portions of the Project to 84 under terms set forth in the following written agreements: (1) a Critical Requirements of the Subcontractor Agreement executed by the parties on January 16 and 17, 2014 (the "Subcontract"); (2) an Addendum executed by the parties on January 16 and 17, 2014 (the "Addendum"); and (3) two separate but identical Commercial Credit Agreements signed by TTC on March 27, 2013, and October 24, 2013 (the "Credit Agreements").

The Court has already ruled that both the Subcontract and the Addendum together govern the parties' relationship with respect to the Project. (Opinion 12, ECF No. 105.) By its terms, the Addendum modifies and supersedes any conflicting terms in the Subcontract. (Am. Compl. Ex. 2, ECF No. 44-2 (hereinafter, the "Addendum"), at ¶ 1.)

**A. The Addendum's Incorporation of a Credit Agreement**

The Addendum incorporates by reference a Contractor Commercial Credit Agreement as follows:

> **Payments**: All invoices issued and payments made in connection with the Agreement shall be subject to the terms and conditions of the Contractor Commercial Credit Agreement between Contractor and Subcontractor, which is incorporated herein by reference.

(*Id.* at ¶ 5.)

### B. The Conflicting Provisions on a Right to Suspend Work

The Subcontract and the Addendum contain conflicting provisions regarding a right to suspend work for nonpayment. Specifically, the Subcontract contains the following provision regarding a right to suspend work:

> Should the Contractor fail to timely pay the Subcontractor amounts due under this Agreement, the Subcontractor shall advise the Contractor in writing of the non-payment and continue performance of the Work. Should the Contractor fail to pay within 21 days of receipt of said written notice from the Subcontractor the amounts due in the Subcontractor under this Agreement . . . the Subcontractor may terminate this Agreement by providing written notice of termination to the Contractor.

(Am. Compl. Ex. 1, ECF No. 44 (hereinafter, the "Subcontract"), at ¶ 9.)

The Addendum, on the other hand, provides a right to suspend work as follows:

> If Contractor's Credit Agreement is 14 days past due or greater, 84 reserves the right to suspend this Agreement and any current project(s) and will not be held liable for any damages for such suspension.

(Addendum, ¶ 5.)

### C. The Conflicting Payment Due Dates

The Subcontract and the form version of the Credit Agreements that 84 presented to TTC for signature in March and October 2013 contain conflicting terms regarding when payment for work performed by 84 becomes due. The Subcontract provides that TTC shall make payments "upon receipt of a properly executed and notarized [invoice] . . . for work satisfactorily performed." (Subcontract, ¶ 12.) The Subcontract further provides that invoices submitted by the 5th day of each month must be paid "within 30 days after submission of [an invoice] or 10 days after the Contractor receives payment from the Owner, whichever is later." (*Id.*) In addition, the Subcontract states that invoices "received after the 5th day of the month will not be processed until the 5th day of the following month." (*Id.*)

3

The form version of the Credit Agreements that 84 presented to TTC for signature provides that all invoices submitted before the 25th day of the month "MUST BE PAID IN FULL NO LATER THAN THE TENTH (10TH) OF THE MONTH NEXT FOLLOWING." (84's Mot. S.J. Ex. 1, ECF No. 63-1 (hereinafter the "Credit Agreements"), at pp. 69 and 72, ¶ 1.) Significantly, however, prior to executing the Credit Agreements, TTC crossed out the language stating that it agreed to be bound by this term. *See id.* at pp. 68 and 71.

### D. 84 Suspends Work for Nonpayment

On June 6, 2014, 84 submitted an invoice referred to as "Pay App. 2" to TTC for payment. TTC had not made a payment to 84 on that invoice as of August 6, 2014. As a result of TTC's nonpayment, 84 suspended work on the Project on August 6, 2014. TTC engaged a different subcontractor to complete 84's work on the Project and seeks to recover the damages it claims it suffered as a result.

### E. This Court's Summary Judgment Ruling

On March 20, 2018, this Court granted summary judgment in favor of 84 on TTC's claim for damages arising from 84's August 6, 2014 suspension of work. (Opinion 16, ECF No. 105.) Without recognizing that the terms regarding payment due date had been struck from the Credit Agreements, the Court ruled that the Credit Agreements were incorporated by reference into the Addendum. Because the Addendum supersedes conflicting terms in the Subcontract, the Court held that the payment due date in the Credit Agreements controls and thus triggers 84's right to suspend work under the Addendum. Applying the due date in the form Credit Agreements, the

Court further held that payment on Pay App. 2 became due on July 10, 2014.[1] Consequently, this Court concluded that 84's right to suspend work under the Addendum arose 14 days later, on July 24, 2014. (Opinion 15, ECF No. 105.) Because 84 suspended work after that date, the Court held that TTC was not entitled to damages resulting from 84's suspension of work and granted summary judgment in favor of 84 on that portion of TTC's breach of contract claim. (*Id.* at 16.)

### F. The Parties' Arguments

In the instant Motion, TTC asks the Court to reconsider its finding that payment became due on July 10, 2014, thereby triggering 84's right to suspend work 14 days later. TTC maintains that the Addendum incorporates by reference the specific Credit Agreements entered into by the parties, not the form version of those agreements. Specifically, TTC points out that the Addendum incorporates "***the*** Contractor Commercial Credit Agreement ***between***" the parties. (TTC's Mem. in Support 3, ECF No. 106-1.) Unlike the form version of those agreements that 84 presented to TTC for signature, the Credit Agreements between the parties struck the terms regarding payment due date. As a result, TTC contends, the Credit Agreement, and therefore the Addendum, is silent as to payment due date, which means the payment due date in the Subcontract controls. Applying that due date, TTC maintains that payment on Pay App. 2

---

[1] The Court reasoned that Pay App. 2 was submitted before the 25th day of June 2014, rendering payment due no later than the 10th day of the following month.

became due on August 4, 2014.[2] Consequently, 84's right to suspend work under the Addendum would not have arisen until at least 14 days later, on August 18, 2014.

TTC contends that 84's right to suspend work would have in fact arisen even later than August 18, 2014, because the Subcontract, not the Addendum, controls 84's right to suspend. According to TTC, the right to suspend in the Addendum is dependent upon a payment due date in the Credit Agreements. Because the due date was struck from the Credit Agreements, the Addendum contains no right to suspend. As such, TTC posits, the Subcontract controls 84's right to suspend. TTC concedes that 84 advised it in writing that payment had not been made on August 4, 2014. (TTC Reply in Support of Mot. S.J. 3, ECF No. 96.) Thus, according to TTC, 84's right to suspend work under the Subcontract would have arisen 21 days later, on August 25, 2014.

In the alternative, TTC maintains that even if the payment due date in the Addendum controls, payment on Pay App. 2 was not due prior to 84's August 6, 2014 suspension of work because that invoice included work that was not satisfactorily performed. TTC argues that the Subcontract requires payment only on invoices "for work satisfactorily performed." Thus, even if the payment due date in the Credit Agreement controls, payment was not due as of August 6, 2014, because Pay App. 2 included work that was not satisfactorily performed.

In opposing TTC's request for reconsideration, 84 maintains that the Addendum incorporates by reference the form version of the Credit Agreement, not the Credit Agreement entered into by the parties. Thus, although 84 acknowledges that TTC struck the terms regarding

---

[2] Specifically, because Pay App. 2 was submitted on June 6, 2014, which was after the 5th day of the month of June, the Subcontract provided that it would be processed on the 5th day of the following month, rendering payment due within 30 days of July 5, 2014.

payment due date from the March and October 2013 Credit Agreements before signing them, it contends that the payment due date in the form version of the Credit Agreement nevertheless controls. 84 contends that payment on Pay App. 2 consequently became due on July 10, 2014, as this Court held, giving 84 the right to suspend work on or after July 24, 2014, well in advance of its August 6, 2014, suspension of work. As for TTC's alternative argument, 84 maintains that even if a portion of the work reflected in Pay App. 2 was defective, payment nevertheless became due for work that was satisfactorily performed, which was sufficient to trigger 84's right to suspend work. The Court considers the parties' arguments in turn below.

## II.

Federal Rule of Civil Procedure 54(b), "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). In addition, "[d]istrict courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of final judgment." *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991) (citing *Marconi Wireless Tel. Co. v. United States*, 320 U.S. 1, 47-48 (1943)). A court properly reconsiders an interlocutory order "'whe[re] there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice.'" *Louisville/Jefferson Cnty. Metro Gov't v. Hotles.Com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009) (quoting *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004)). That said, "[a] motion for reconsideration 'should not be used to re-litigate issues previously considered.'" *Cockshutt v. State Dep't of Rehab & Corr.*, No. 2:12-cv-532, 2013 WL

7

4052914, *14 (S.D. Ohio Aug. 9, 2013) (quoting *Am. Marietta Corp. v. Essroc Cement Corp.*, 59 F. App'x 668, 671 (6th Cir. 2003)).

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party has the initial burden of proving that no genuine issue of material fact exists, and the court must draw all reasonable inferences in the light most favorable to the nonmoving party." *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion").

The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citation omitted). "The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, . . . there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute." *Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) (internal quotation marks and citations omitted), *cert. denied*, 565 U.S. 1157 (2012); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record"). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stansberry*, 651 F.3d at 486 (citing *Celotex*, 477 U.S. at 322–23).

Additionally, when actions are brought pursuant to diversity jurisdiction, this Court generally applies the substantive law of the forum state. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, (1938). But, when interpreting contracts in a diversity action, the Court generally enforces the parties' contractual choice of governing law. *See, e.g., Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 596 (1991); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). In this case, the parties contracted to have Ohio law govern their contract.

When applying Ohio law, this Court must "follow the decisions of the state's highest court when that court has addressed the relevant issue." *Talley v. State Farm Fire & Cas. Co.*, 223 F.3d 323, 326 (6th Cir. 2000). If the state's highest court has not directly addressed the issue, the Court must "anticipate how the [] state's highest court would rule . . . ." *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005). State-court appellate decisions may be persuasive indicators of the likely ruling of the state's highest court. *Id.*

### III.

Applying the foregoing standards here, the Court concludes that reconsideration is warranted with respect to TTC's position that the payment due date in the Subcontract controls. The Court is unpersuaded by TTC's alternative argument that payment did not become due because Pay App. 2 included work that was not satisfactorily performed.

#### A. Controlling Payment Due Date

TTC seeks reconsideration of the Court's summary judgment ruling on TTC's claim for damages arising from 84's suspension of work on the grounds that the Court did not consider the undisputed fact that TTC struck the terms regarding payment due date from the Credit Agreements before executing them. The Court agrees that this undisputed fact, which was inadvertently omitted from its prior Opinion, changes the outcome on this portion of 84's motion

9

for summary judgment. Reconsideration is therefore warranted to prevent manifest injustice. *Hotels.Com, L.P.*, 590 F.3d at 389.

As this Court recognized in its prior Opinion, for a contract to incorporate a document by reference, the contract must make clear reference to the document and describe it in such terms that its identity may be ascertained beyond a doubt. *Volovetz v. Tremco Barrier Sols., Inc.*, 74 N.E.3d 743, 751 (Ohio Ct. App. 10th Dist. 2016) (citations omitted). Mere reference to a document is insufficient to incorporate it. *Id.* Critically to TTC's request for reconsideration, the contract language must also clearly demonstrate that the parties intended to incorporate all or part of the referenced document. *Id.* (citations omitted).

Here, upon reconsideration of the undisputed fact that the terms regarding payment due date were struck from the Credit Agreements, the Court concludes that the Addendum fails to clearly demonstrate that the parties intended to incorporate those terms into their agreement. By its plain-language terms, the Addendum incorporates by reference the specific Credit Agreements entered into by the parties. *See* Credit Agreement, ¶ 5 (incorporating by reference "***the*** Contractor Commercial Credit Agreement ***between*** [TTC] and [84]" (emphasis added)). The terms regarding payment due date were crossed out in the Credit Agreements. As such, the parties did not intend for those terms to be incorporated into the Addendum. *Cf. Masco Cabinetry Middlefield, LLC v. Cefla N. Am., Inc.*, 637 F. App'x 192, 196 (6th Cir. 2015) (finding terms were incorporated into a contract by reference where the terms "were not crossed out or modified in any way, although other preprinted terms on the form . . . were crossed out").

The Court is unpersuaded by 84's contention that the Addendum incorporated the form version of the Credit Agreements. Again, the plain language of the Addendum specifically incorporates "the" agreement "between" the parties, which demonstrates an intent to incorporate

10

the Credit Agreements as they were agreed to by the parties. The Addendum makes no reference to the form version of the Credit Agreements. Nor does it otherwise contain language that demonstrates an intent to incorporate terms that were indisputably crossed out of the Credit Agreements.

The Court finds 84's remaining arguments to be equally unpersuasive. First, the fact that TTC did not strike any language in the Addendum that incorporated the Credit Agreements is immaterial. The fact remains that the plain language of the Addendum incorporates the Credit Agreements between the parties, and those agreements struck the terms regarding payment due date. Nor does TTC's position require the Court to consider extrinsic evidence regarding the parties' intent, as 84 contends. Rather, TTC's argument rests on the plain language of the Addendum. Finally, the Court disagrees with 84's contention that the position TTC takes in its Motion for Reconsideration contradicts its position in summary judgment briefing, thereby precluding reconsideration. Although TTC maintained on summary judgment that the Addendum only references a generic Credit Agreement, it did so in the context of arguing that the Addendum failed to specify whether it incorporated the March or October 2013 Credit Agreement. TTC has never taken the position that the Addendum incorporates by reference the form version of the Credit Agreements that 84 presented to it for signature in 2013.

Because the Addendum failed to incorporate the due date set forth in the form version of the Credit Agreements, the due date in the Subcontract controls. Pursuant to the terms of the Subcontract, payment on Pay App. 2 became due on August 4, 2014.[3] Thus, 84's right to

---

[3] The Court notes that a jury could conclude from the evidence that payment became due a day earlier, on August 3, 2014. The evidence demonstrates that TTC received payment from the owner on July 24, 2014, which TTC concedes arguably included partial payment for work

suspend work under the Addendum would not have arisen until 14 days later, on August 18, 2014. As a result, 84 did not have a contractual right to suspend work on August 6, 2014, when it did so. Therefore, 84 is not entitled to summary judgment on TTC's claim for damages arising from 84's August 6, 2014 suspension of work.

TTC raises one final issue that warrants consideration, although it does not affect the outcome. Relying on a statement in the Court's prior Opinion that the Subcontract would control 84's right to suspend work if no Credit Agreement was incorporated into the Addendum (Opinion, 13-14), TTC maintains that because the material terms of the Credit Agreements were crossed out, no Credit Agreement was incorporated into the Addendum, and therefore 84's right to suspend work arose under the Subcontract, not the Addendum. (TTC Mem. in Support 3, ECF No. 106-1.)

The Court cannot conclude as a matter of law that the Subcontract rather than the Addendum controls 84's right to suspend work. The Addendum, which supersedes the Subcontract on all conflicting terms, states that "[i]f ***Contractor's Credit Agreement*** is 14 days past due or greater," 84 may suspend work. (Addendum, ¶ 5) (emphasis added.) Both parties appear to assume in briefing, without explanation, that the term "Contractor's Credit Agreement" in this clause is synonymous with "payment." If that is what the parties intended, 84 would have a right to suspend work under the Addendum when payment is 14 days past due or greater, regardless of whether the payment due date in the Subcontract or the Credit Agreement controls.

---

reflected in Pay App. 2. (TTC Reply in Support of Mot. S.J. 5, ECF No. 96.) Assuming a jury concludes that TTC in fact received payment for work reflected in Pay App. 2 on July 24, 2014, payment to 84 would have been due ten days later, on August 3, 2014. Nevertheless, this distinction is immaterial to the outcome here.

Conversely, if a jury were to conclude that the parties intended for the right to suspend set forth in the Addendum to be dependent upon a payment due date in the Credit Agreement, the fact that the Credit Agreement contains no due date would mean the Addendum contains no right to suspend. In that instance, the Subcontract would control 84's right to suspend work. The distinction makes no difference to the outcome here, however, because even if the Subcontract controls, 84's right to suspend would not have arisen until August 25, 2014. Under either scenario, 84 did not have a right to suspend work on August 6, 2014, which precludes summary judgment in its favor on TTC's claim for damages arising from the suspension.

**B. Pay App. 2's Inclusion of Work Not Satisfactorily Performed**

The Court is unpersuaded by TTC's argument that payment on Pay App. 2 was not due as of August 6, 2014, because it included defective work. The Subcontract controls the payment due date, as discussed above. The Subcontract provides that payment is due upon receipt of an invoice for "[w]ork satisfactorily performed." (Subcontract, ¶ 12.) The Court finds that this language reflects the parties' intent that payment for any work satisfactorily performed would become due pursuant to the terms of the Subcontract upon submission of an invoice for such work, even if the invoice also included work that was not satisfactorily performed.

TTC contends otherwise, arguing that payment does not become due if any portion of the work reflected on the invoice was not satisfactorily performed. In other words, TTC argues that for any payment to become due at all on an invoice, all of the work reflected in the invoice must have been satisfactorily performed. The Subcontract, however, does not state that payment becomes due upon receipt of an invoice for work, *all of which was* satisfactorily performed. Rather, it states that payment becomes due for work satisfactorily performed. Consequently, where an invoice seeks payment for some work that was satisfactorily performed and some work

that was not, payment becomes due in accordance with the terms of the Subcontract on at least that portion of the work that was satisfactorily performed.

The provision of the Subcontract that gives TTC the right to withhold payment for defective work does not affect the Court's analysis. Nothing in the Subcontract gives TTC the right to withhold payment for satisfactory work. Rather, the Subcontract permits TTC to withhold payment "on account of defective work not remediated." (Subcontract, ¶ 12.) Thus, where an invoice requests payment for work, a portion of which was "satisfactorily performed," payment for that work becomes due in accordance with the terms of the Subcontract, even if TTC may otherwise withhold payment for defective work.

Here, there appears to be no dispute that at least a portion of the work reflected in Pay App. 2 was satisfactorily performed. *See*, *e.g.*, TTC's Reply 3, ECF No. 109 (contending that a "significant" portion of the work invoiced—not all of the work invoiced—was defective). In fact, the evidence suggests that TTC sought and received payment from the owner for $20,485.00 of the $39,610.08 invoiced in Pay App. 2. Consequently, payment became due consistent with the terms of the Subcontract for the portion of the work reflected in Pay App. 2 that was satisfactorily performed.

## IV.

In sum, TTC's Motion to Reconsider (ECF No. 106) is **GRANTED in part and DENIED in part**, as set forth herein. Specifically, the Motion is **GRANTED** insofar as TTC asks the Court to reconsider its ruling that the Addendum incorporates by reference the payment due date that was struck from the parties' March and October 2013 Credit Agreements. Upon reconsideration, the Court **DENIES** 84's Motion for Summary Judgment as it relates to TTC's

claim for damages resulting from 84's August 6, 2014 suspension of work.  In all other respects, TTC's Motion for Reconsideration (ECF No. 106) is **DENIED**.

This action will proceed on 84's claims for breach of contract, unjust enrichment, and violation of Ohio's Prompt Payment Act, as well as TTC's claim for breach of contract, except that TTC may not recover liquidated damages or attorney's fees and costs under the Subcontract.

This matter is hereby scheduled for a telephonic conference on **Thursday, August 2, 2018, at 2:00 p.m.**  The parties are **DIRECTED** to join together and then call (614)719-3410 to initiate the conference.

**IT IS SO ORDERED**.

 /s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE