# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**84 LUMBER COMPANY, LP,**

    **Plaintiff,**

    v.                                       Case No. 2:15-cv-1052
                                              Magistrate Judge Chelsey M. Vascura

**THOMPSON THRIFT**
**CONSTRUCTION, INC.,**

    **Defendant.**

## OPINION AND ORDER

This case arises out of a Subcontract, Addendum, and Contractor's Credit Agreements related to the construction of a large multi-family residential complex in Delaware, Ohio (the "Project"). The matter is before the Court on Plaintiff/Counterclaim Defendant 84 Lumber Company, LP's ("84") Motion for Reconsideration (ECF No. 112) of this Court's Order of July 26, 2018 (ECF No. 110), which held that the due date for payments by Defendant / Counterclaimant Thompson Thrift Construction, Inc. ("TTC") to 84 was controlled by the Subcontract. For the reasons set forth herein, 84's Motion is **GRANTED**.

### I.     BACKGROUND

The Court incorporates by reference the factual and procedural background set forth in its March 20, 2018 Opinion and Order granting in part and denying in part the parties' cross-motions for summary judgment (ECF No. 105) and its Opinion and Order granting in part and denying in part TTC's previous motion for reconsideration (ECF No. 110). As such, the Court

references only those facts that are pertinent to the issues before it on the present request for reconsideration.

TTC, the general contractor for a large multi-family residential complex in Delaware, Ohio (the "Project"), subcontracted portions of the Project to 84 under terms set forth in the following written agreements: (1) a Critical Requirements of the Subcontractor Agreement executed by the parties on January 16 and 17, 2014 (the "Subcontract," ECF No. 44-1); (2) an Addendum executed by the parties on January 16 and 17, 2014 (the "Addendum," ECF No. 44-2); and (3) a Commercial Credit Agreement signed by TTC on October 24, 2013 (the "Credit Agreement," ECF No. 63-1 at 71–72).

The Court has already ruled that both the Subcontract and the Addendum together govern the parties' relationship with respect to the Project. (March 20, 2018 Order, ECF No. 105 at 12.) By its terms, the Addendum modifies and supersedes any conflicting terms in the Subcontract. (Addendum at ¶ 1.)

The Addendum further states that "[a]ll invoices issued and payments made in connection with the [Subcontract] shall be subject to the terms and conditions of the Contractor-Commercial Credit Agreement between [TTC] and [84], which is incorporated by reference." (Addendum at ¶ 5). However, prior to executing the operative Credit Agreement, TTC crossed out language indicating TTC's agreement to the Credit Agreement's terms and conditions. (Credit Agreement, ECF No. 63-1 at p. 71.) Thus, the Court previously held in its July 26, 2018 Order that the terms and conditions of the Credit Agreement were not incorporated into the Addendum. (ECF No. 110 at 10.) As a result, the Court concluded that the quoted provision of the Addendum was of no force, and that therefore the provision in the Subcontract governing timing of payments controlled. (*Id.* at 11.)

84 now brings this motion for the limited purpose of requesting reconsideration of the Court's July 26, 2018 Order's finding that "the due date in the Subcontract controls." (84's Motion, ECF No. 112-1 at 1, quoting ECF No. 110 at 11.) Instead, 84 contends that Addendum controls the timing of payments from TTC to 84. (ECF No. 112-1 at 4–5.) 84 further states that "[f]or purposes of this motion only, 84 is not requesting reconsideration of" the Court's holding that "84 failed to properly incorporate by reference the terms and conditions of its Contractor-Commercial Credit Agreement." (*Id.* at 2 n.5.)

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 54(b), "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). In addition, "[d]istrict courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of final judgment." *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991) (citing *Marconi Wireless Tel. Co. v. United States*, 320 U.S. 1, 47-48 (1943)). A court properly reconsiders an interlocutory order "'whe[re] there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice.'" *Louisville/Jefferson Cnty. Metro Gov't v. Hotles.Com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009) (quoting *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004)). That said, "[a] motion for reconsideration 'should not be used to re-litigate issues previously considered.'" *Cockshutt v. State Dep't of Rehab & Corr.*, No. 2:12-cv-532, 2013 WL 4052914, *14 (S.D. Ohio Aug. 9, 2013) (quoting *Am. Marietta Corp. v. Essroc Cement Corp.*, 59 F. App'x 668, 671 (6th Cir. 2003)).

## III.     DISCUSSION

The parties' agreement comprises three documents: the Subcontract, the Addendum, and the Credit Agreement. Each document contains provisions related to the timing of payments from TTC to 84. As the Court has already determined that the Credit Agreement's terms and conditions were not incorporated into the parties' agreement, and because 84 does not challenge that holding, the Court is left to consider the payment timing provisions only in the Subcontract and Addendum.

The Addendum modifies and supersedes any conflicting terms in the Subcontract. (Addendum at ¶ 1.) Thus, to the extent the Addendum's payment timing provisions are effective and conflict with those of the Subcontract, the Addendum controls. (*Id.*) Paragraph 5 of the Addendum provides as follows:

> **All invoices issued and payments made in connection with the [Subcontract] shall be subject to the terms and conditions of the Contractor-Commercial Credit Agreement between [TTC] and [84], which is incorporated by reference**. If [TTC]'s Credit Agreement is 14 days past due or greater, 84 reserves the right to suspend this [Subcontract] and any current project(s) and will not be held liable for any damages for such suspension. If, for any reason, the Work has been suspended or 60 days or longer, 84 may terminate this [Subcontract]. [TTC]'s liability for payment on [TTC]'s Credit Agreement with 84 is primary and is not conditioned upon [TTC] receiving payment from any third party. Retainage, if any, will be withheld from labor only and will not exceed 10%. No retainage will be withheld on materials. Retainage will be paid back within 30 days of completion of 84's scope of work. **84 will submit all applications for payment by the 10th of each month and [TTC] agrees to pay 84 by no later than the 10th of the following month**.

(Addendum, ¶ 5 (emphasis added).)

In its July 26, 2018 Order, the Court found that the first bolded sentence of Paragraph 5 did not set forth an effective provision governing payment timing because the terms and conditions of the Credit Agreement were not incorporated. Therefore, the Addendum lacked a superseding payment timing provision, and, as a result, the Court held that the payment timing

4

provisions of the Subcontract control. (ECF No. 110 at 11.) However, at that time, the parties did not raise, and the Court overlooked, the second bolded sentence of the Addendum's Paragraph 5, which contains a payment timing term that does not depend on the effective incorporation of the Credit Agreement's terms and conditions.[1] Regardless of whether the Credit Agreement's terms and conditions were incorporated into the Addendum, TTC was required by the Addendum to submit payment to 84 by the 10th of the month following a timely payment application by 84. And because the Addendum controls in the event of a conflict with the Subcontract, the Subcontract does not necessarily control the timing of payments to 84. The Court therefore grants this portion of 84's request for reconsideration.

However, the Court is unable to conclude at this time that the Addendum's timing provision necessarily controls. TTC argues that even if the Addendum's provision requiring payment by the 10th of the month is effective, it is subject to the "pay-if-paid" clause contained in the Subcontract, which provides: "Notwithstanding anything herein to the contrary, receipt of payment by [TTC] from the [Project] Owner shall be a condition precedent to the right of [84] to receive payment from [TTC] hereunder." (Subcontract at ¶ 12.) On the other hand, the Addendum contains a conflicting (and therefore controlling, if effective) provision: "[TTC's] liability for payment on Contractor's Credit Agreement with 84 is primary and is not conditioned upon [TTC] receiving payment from any third party." (Addendum at ¶ 5.) It is possible, depending on the intent of the parties, that this Addendum provision could be effective as to

---

[1] The Court recognizes that it could have used more precise language when it stated in its March 20, 2018 Order that "[i]f no Credit Agreement was incorporated, Paragraph 5 of the Addendum is meaningless." (ECF No. 105 at 13–14.) It is clear from the language of Paragraph 5 that not every provision depends on incorporation of the Credit Agreements' terms and conditions, and therefore the Court's earlier statement regarding Paragraph 5's meaninglessness should have been limited to those portions that are so dependent.

5

payments from TTC to 84 on the Project, even if the Credit Agreements' terms and conditions are not effective. (*See* July 26, 2018 Order, ECF No. 110 at 12–13.) This is a question of fact that must await determination at trial.

As a result, even though 84's request for reconsideration is granted as to the controlling effect of the Subcontract's timing provision, the Court cannot alter its previous holding that cost-of-completion damages may be available to TTC. The availability of these damages will depend on multiple fact issues that can only be resolved at trial, including but not limited to the effectiveness of the Subcontract's pay-if-paid clause, as discussed *supra*; the effectiveness of the Addendum's provision regarding 84's right to suspend work for nonpayment, as discussed in the Court's July 26, 2018 Order (ECF No. 110 at 12–13); and, if the Subcontract governs 84's right to suspend work or terminate the agreement, whether 84 provided the required notice of termination (Subcontract at ¶ 9).

As a final matter, TTC makes two additional arguments in its opposition brief: First, TTC argues the Court reached the wrong conclusion in its July 26, 2018 Order regarding TTC's ability to withhold payment for satisfactory work when deficient work remains unremedied. (ECF No. 115 at 5–8.) But TTC has not filed a motion for reconsideration of the July 26, 2018 Order and the Court declines to reconsider the holding in question at this time.

Second, TTC argues that the parties agreed to modify the terms of their agreement to delay payment until the manufacturer of the siding installed by 84 certified that the installation was satisfactory. (*Id.* at 8–11.) But this is the first time in four rounds of briefing that TTC submitted communications between the parties purporting to agree to delay payment pending certification by the siding manufacturer. Motions for reconsideration are not intended to re-litigate issues previously considered by the Court or to present evidence that could have been

raised earlier. *Ne. Ohio Coal. for Homeless v. Brunner*, 652 F. Supp. 2d 871, 877 (S.D. Ohio 2009). Accordingly, the Court declines to consider this argument at the summary judgment stage (though TTC remains free to raise it at trial).

## IV. CONCLUSION

For the foregoing reasons, 84's Motion for Reconsideration is **GRANTED IN PART and DENIED IN PART**, as set forth herein. Specifically, the Motion is **GRANTED** insofar as 84 asks the Court to reconsider its July 26, 2018 ruling that "the due date in the Subcontract controls." (ECF No. 110 at 11.) However, the Court also cannot conclude at this time that the due date in the Addendum controls, and therefore it reaffirms its July 26, 2018 ruling that "the Court **DENIES** 84's Motion for Summary Judgment as it relates to TTC's claim for damages resulting from 84's August 6, 2014 suspension of work." (ECF No. 110 at 15.)

This action will proceed on 84's claims for breach of contract, unjust enrichment, and violation of Ohio's Prompt Payment Act, as well as TTC's claim for breach of contract, except that TTC may not recover liquidated damages or attorney's fees and costs under the Subcontract.

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE